FILED

2016 FEB -4  AM 10: 05

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT**

**OF OHIO**

~~JUDGE ADAMS~~

4: 16 CV 0267

**In Propria Persona**

JUDGE PEARSON

MAG. JUDGE BURKE

| | |
|---|---|
| Sakina Maysan Bey (Executor) | ) Case No. |
| Ex Relatione SHEILA M.  HAYES | ) AFFADAVIT FOR |
| c/o 1422 Lansdowne Boulevard, | ) |
| Youngstown Territory, Ohio Republic Zip | ) 1.    COMPLAINT FOR FRAUD; |
| Exempt [44505] | ) 2.    VIOLATIONS OF |
| Plaintiff, | )        (OHIO CORRUPT PRACTICES |
| vs. | )        ACT ("OCPA"), R.C. 2923.31, ET |
| JEFFREY J. BROWN acting as CHIEF | )        SEQ.) & the "Organized Crime |
| EXECUTIVE OFFICER (CEO) & DIRECTOR, | )        Control Act of 1970," 84 Stat. 941, |
| CHRISTOPHER A.  HALMY acting as CHIEF | )        18 U.S.C. 1961(1)(B), (1)(C), (1)(D), |
| FINANCIAL OFFICER (CFO) for GMAC/ALLY | )        and (1)(E) ; |
| FINANCIAL INC. et. al, 200 Renaissance Center | ) 3.    LACK OF STANDING TO |
| P.O. Box 200 Detroit, Michigan 48265-2000; | )        FORECLOSURE; |
| DONALD E. POWELL acting as CHAIRMAN OF | ) 4.    TEMPORARY AND |
| THE BOARD for  the FEDERAL DEPOSIT | )        PERMANENT  INJUNCTIVE |
| INSURANCE CORPORATION (FDIC) et. al. , | )        RELIEF AND  OTHER; |
| 1100 Walnut St, Box #11 | ) |
| Kansas City, MO 64106;  JAMES L. DIMON | ) 5.    CRIMES AGAINST HUMANITY; |
| acting as CHAIRMAN OF THE BOARD, | ) 6.    VIOLATION OF TILA & HOEPA |
| PRESIDENT, (CEO), MARIANNE LAKE acting | ) 7.    VIOLATION OF RESPA |
| as (CFO) of JPMORGAN CHASE & CO., et. al. , | ) 8.    QUIET TITLE; |
| 270 Park Avenue, Floor 38, New York, NY 10017- | ) 9.    HUMAN RIGHTS VIOLATIONS |
| 2014; | ) 10.    RECISSION. |

0

**COMPLAINT**

RONALD M FARIS acting as PRESIDENT,CEO     )  10.    **RECISSION.**
and MICHAEL R. BOURQUE, Jr. acting as CFO  )  11.    **DEMAND FOR JURY TRIAL**
of OCWEN FINANCIAL CORPORATION, 1661
Worthington Road, Suite 100 West Palm Beach, FL
33409;  BRUCE DARYL acting as CEO for
DITECH FINANICAL, LLC N.A., et. al 3000
Bayport Drive, Suite 880, Tampa, Florida 33607;
KEITH ANDERSON acting as CEO/PRESIDENT
for GREEN TREE, LLC N.A. et al, 345 Saint Peter
St. Ste 345 Saint Paul, MN 55102; Denmar dixon
ACTING AS ceo AND gary l tillett ACTING AS cfo FOR
WALTER INVESTMENT MANAGEMENT CO., ET AL,
3000 BAYPORT DR. STE 1100, TAMPA, FL33607-8405.

                    **Defendants.**

---

COMES NOW the Plaintiff, Sakina Maysan Bey ex Relatione SHEILA MARIE HAYES ("Plaintiff"). Plaintiff sue Defendants as named above, jointly and individually for Fraud, Violations of the Ohio Corrupt Practices Act ("OCPA"), R.C. 2923.31, et seq. & the "Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E) and for other relief and demand trial by jury, and state:

## I. Jurisdiction, Venue, and Parties

### A. Jurisdiction and Venue

**1.** This is an action for damages which does not exceed the jurisdictional limit of this Court and damages are recoverable under the claims set forth herein including the Ohio Corrupt Practices Act ("OCPA"), R.C. 2923.31, et seq., and the "Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E) and for which damages have been

1  suffered by the Plaintiff due from the actions and conduct of the Defendants as set forth

2  hereinbelow; for temporary and permanent injunctive relief in Ohio State; and for other relief,

3  and for trial by jury of all issues so triable as a matter of right.

4  **2. Jurisdiction** of this action is proper in this Court as Defendants maintain numerous offices

5  for the conduct of regular and continuous business within the State of Ohio including

6  MAHONING County, Ohio as well as in the State of Florida for Defendants DITECH who are

7  proceeding with foreclosure on the Plaintiffs property and as numerous of the acts set forth

8  herein were committed by all Defendants named in this complaint with the exception of FDIC

9  (who may or may not be a party to this complaint if they're found not to be the holders of the

10  Security Certificate under Receivership during the time that it was registered to do business in

11  Ohio). **Note:** DITECH, LLC, OCWEN, GMAC are all Bankrupt Chapter 11 entities and

12  DITECH is operating without a license to do business in the State of Ohio.

13  **3. Venue** of this action is proper in this Court as applicable Ohio law provides that if venue is

14  proper as to any one Defendant in multi-Defendant litigation that venue is proper as to all

15  Defendants, and as venue is proper as to Defendants **JEFFREY J. BROWN acting as CHIEF**

16  **EXECUTIVE OFFICER (CEO) & DIRECTOR, CHRISTOPHER A.  HALMY acting as CHIEF**

17  **FINANCIAL OFFICER (CFO) for GMAC/ALLY FINANCIAL INC. et. al, DONALD E. POWELL acting**

18  **as CHAIRMAN OF THE BOARD for  the FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC)**

19  **et. al. ,  JAMES L. DIMON acting as CHAIRMAN OF THE BOARD, PRESIDENT, (CEO), MARIANNE**

20  **LAKE acting as (CFO) of JPMORGAN CHASE & CO., et. al. , RONALD M FARIS acting as**

21  **PRESIDENT, CEO and MICHAEL R. BOURQUE, Jr. acting as CFO of OCWEN FINANCIAL**

22  **CORPORATION, BRUCE DARYL acting as CEO for DITECH FINANICAL, LLC N.A., et. al ; KEITH**

23  **ANDERSON acting as CEO/PRESIDENT for GREEN TREE, LLC N.A. et al, DENMAR DIXON acting as**
   **CEO and GARY L TILLETT acting as CFO for WALTER INVESTMENT MANAGEMENT, et al**

24
25  **The Parties**

26
27  Plaintiff Sakina Maysan Bey ex Relatione SHEILA MARIE HAYES is domiciled at Mahoning

28  County, Ohio State who is over the age of eighteen (18). Defendants, **JEFFREY J. BROWN acting**
   **as CHIEF EXECUTIVE OFFICER (CEO) & DIRECTOR, CHRISTOPHER A.  HALMY acting as CHIEF**
   **FINANCIAL OFFICER (CFO) for GMAC/ALLY FINANCIAL INC. et. al, DONALD E. POWELL acting**
   **as CHAIRMAN OF THE BOARD for  the FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC)**
   **et. al. ,  JAMES L. DIMON acting as CHAIRMAN OF THE BOARD, PRESIDENT, (CEO), MARIANNE**

**COMPLAINT**

LAKE acting as (CFO) of JPMORGAN CHASE & CO., et. al. , RONALD M FARIS acting as PRESIDENT AND CEO, MICHAEL R. BOURQUE, Jr. acting as CFO, of OCWEN FINANCIAL CORPORATION, BRUCE DARYL acting as CEO for DITECH FINANICAL, LLC N.A., et. al ; KEITH ANDERSON acting as CEO/PRESIDENT for GREEN TREE, LLC N.A. et al, DENMAR DIXON acting as CEO and GARY L TILLETT acting as CFO for WALTER INVESTMENT MANAGEMENT CORPORATION, et al: (herein referred to as "ALLY/GMAC, CHASE, FDIC, OCWEN, DITECH, WALTER" or Defendants) all parties Plaintiff is informed and believes, and thereon alleges played a part in the fraud of the Plaintiff's alleged debt/loan that was fraudulently turned into a Security/Trust Certificate and no longer  constitutes the definition of a loan under (Title 12 U.S.C. 1831(1)(1) and 12 U.S.C. 1831 n) of the Generally Accepted Accounting Principles (GAAP) and (GAAS) which mandates Securities. Plaintiff is further informed and believes, and thereon alleges from recent discovery on January 21, 2016 that GMAC  is the Originator of the loan—a loan forever converted into a Bond (Security)/Trust Certificate; that  JPMORGAN CHASE & CO. was doing business in the County of MAHONING, State of OHIO  at the time of this action and is the purported Depositor and Financing Agent for the Securitized Trust and/or a purported participant in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust and received proceeds /earnings from the pool of Trust Certificates, that OCWEN became the Servicer/Trustee over  as more particularly described in this AFFADAVIT.

4.  Defendant(s) are acting as Trustee(s) for the securitized trust. Plaintiff is informed and believes, and thereon alleges that, Defendants doing business in the County of MAHONING, State of OHIO are not the originators of the trust and can't claim ownership of the Promissory Note/contract as it no longer exist due to fraud and because it was converted into a Security. The only party that is in a position to come before the court and stake a claim on the plaintiff's alleged loan is the Stock Market. DITECH has No standing to foreclose; Defendants are merely Servicers over a Security not a Loan as described in this AFFADAVIT.

**COMPLAINT**

## III. **INTRODUCTORY ALLEGATIONS**

**5.** If the Defendants DITECH et. al are claiming to be the originator/holders of the Promissory Note, proof as requested by the Plaintiff has not been received. Defendants must rebut with proof that the loan still exist: 1) the Promissory Note has not been separated from the Mortgage, 2) it has not been converted into a Security Bond, 3) it has not been placed into a Trust 4) it has not been traded on the Stock Market. Plaintiff is further informed and believes, and thereon alleges that the truth of the matter is that GMAC is the originator of the alleged loan/debt as further described in discovery and/or Exhibit_____. DITECH is the latest in a long chain of violators who have defrauded the Plaintiff in this case. ALLY/GMAC, JP MORGAN, OCWEN, GREEN TREE and DITECH are instrumental in the initial fraud or the after-math, but it is DITECH who is currently committing fraud against the Plaintiff. The Plaintiff is the injured party that needs recoupment for interest made off of her name; her property left alone and unmolested, and her credit restored back to good standing with all credit bureaus involved; DITECH as the servicer is not an injured party in this Affidavit because the risk/debt was removed from the Bankrupt Entity, GMAC when they created the Trust.

**6.** A servicer can only exist if there's a Trust. A Trust by its very definition must have a Servicer. If a Servicer exists, then a Security and a TRUST must exist as they go hand-in-hand. FDIC has Receivership of GMAC. The Defendant DITECH acting as GMAC's asset Recovery Company have no right to claim recoupment for GMAC (the bankrupt entity under FDIC) because there is no asset to recover on behalf of the true originator of the alleged debt GMAC. The alleged loan/debt was insured at over twice its value and DITECH is also a Chapter 11 Bankrupt Entity. The alleged Mortgage loan and Promissory Note is not on DITECH's Balance Sheet. The true holder of the Promissory Note is the Stock Market and a Stock Market cannot foreclose on a Mortgage. The Plaintiff requested evidence through QWR type instruments: Writs, Fiduciary Request Reconveyance(s) and Letters via registered mail, Notary Presentment, and Certified Mail and Certificate of mailing. Defendants continually ignored Plaintiff's request for months and acquiesced by default, thereby refusing to prove the debt. Plaintiff had no other recourse but to serve the Defendants with an Affidavit of Facts-Notice of Default Judgement for their refusal to honor the Plaintiffs continued requests when they acquiesced. According to FASB 125 Securitization Accounting, once GMAC removed the asset and

expended/ transferred it to remove all risks, they became the Transferor and it is therefore considered a sale:

**A transfer of financial assets in which the transferor surrenders control over those assets is accounted for as a sale to the extent that consideration other than beneficial interests in the transferred assets is received in exchange. The transferor has surrendered control over transferred assets if and only if all of the following conditions are met:**

> *a. The transferred assets have been isolated from the transferor—put presumptively beyond the reach of the transferor and its creditors, even in bankruptcy or other receivership.*
>
> *b. Either (1) each transferee obtains the right—free of conditions that constrain it from taking advantage of that right—to pledge or exchange the transferred assets or (2) the transferee is a qualifying special-purpose entity and the holders of beneficial interests in that entity have the right—free of conditions that constrain them from taking advantage of that right—to pledge or exchange those interests.*
>
> *c. The transferor does not maintain effective control over the transferred assets through (1) an agreement that both entitles and obligates the transferor to repurchase or redeem them before their maturity or (2) an agreement that entitles the transferor to repurchase or redeem transferred assets that are not readily obtainable.*
>
> According to FAS133 of the FASB, GMAC should have kept the Plaintiff's Promissory Note on their Balance Sheet instead of expending it to a Trust and turning it into a Security. *FAS 133, is an accounting standard issued in June 1998 by the Financial Accounting Standards Board (FASB) that requires companies to measure all assets and liabilities on their Balance Sheet.*
>
> *22.) Cash inflows from operating activities are: a. Cash receipts from sales of goods or services, including receipts from collection or sale of accounts and both short- and long-term notes receivable from customers arising from those sales b. Cash receipts from returns on loans, other debt instruments of other entities, and equity securities—interest and dividends.*

**7.** It is the practice of GMAC and other companies alike to insure the loans/debts of their customers for at least two and a half times the amount of the loan and stand to collect if and when the Plaintiff defaults. Because GMAC filed bankruptcy it is unclear as to how FDIC collected the insurance on behalf of GMAC as their receiver, but one of the Entities mentioned has collected or will collect the funds from their Insurer by claiming that the Plaintiff defaulted on the loan. The Defendants placed the Plaintiff into default status after the Plaintiff placed the Defendants into a Default status, due to the Defendants own negligence, and disregard. The Plaintiff's only regress was to bring this matter before the Federal court in front of a Jury of her

peers to recoup according to law for the Defendants act of RICO fraud, and all other Counts.

**8.** Plaintiff states that the Defendants fraud goes beyond Insurance fraud, it extends to tax fraud for failure to provide the Plaintiff with requested proof of filing of the following tax forms and other items: 1040, 1040-A, 1040-V, 1099-OID; 1099-INT and W-9, Indemnity Bond, Provider(s) and Contact number(s), and their EIN # (which Plaintiff was able to obtain through the SEC filings at SEC filings @ EDGAR.online). Defendants' fraudulent action goes all the way through to being exposed for robo-signing activities and falsification of documents. Upon discovery you will see how GMAC, as a common practice, falsified documents in order to foreclose on a New York Homeowner.

**9.** Defendants are and were at all times material hereto a foreign (non-Ohio incorporated) corporation which engaged in a regular and systematic course of conduct in Ohio including Mahoning County, Ohio which conduct included but was and is not limited to the false claim of the acquisition of this mortgage loan relating to the real property; the institution of fraudulent threats of foreclosure proceedings based on false and fraudulent misrepresentations; the fraudulent collection, through one or more agents including but not limited to Defendants, of monies allegedly owed on a secured promissory note as to the defendant's mortgage loan also through false and fraudulent misrepresentations; and the perpetration of threats of foreclosure, a fraud upon the Mahoning County Common Pleas Court of the United States, including this Court, through false and fraudulent misrepresentations in connection with the threat of filing of foreclosure actions and the prosecution of non-judicial foreclosure practices within this judicial State. This conduct, in the aggregate and in the manner executed, constituted a pattern of criminal activity within this Judicial foreclosure State Ohio.

**10.** Defendants, OCWEN committed Fraud upon the Plaintiff using multiple deceptive practices as was common place practices for the Servicer as evidenced in discovery or exhibit or both:

**11.** ALLY/GMAC the new name for GMAC was at all times material hereto a foreign (non-Ohio incorporated) corporation which engaged in a regular and systematic course of conduct in Ohio including Mahoning County, Ohio which conduct included but was and is not limited to

**COMPLAINT**

false claims of the acquisition of mortgage loans relating to real property, where all Fraud began.

**12.** The actions and course of conduct of the Defendants were executed, as to the Plaintiff, in the same manner and means (fraudulent misrepresentations in documents filed in courts, public records, and through the mails); with the same motive (to institute fraudulent foreclosure proceedings) and the same intended victim (owner of real property) and the same intended consequence (wrongfully foreclosing on real property), pursuant to a well-planned and orchestrated scheme to defraud which is executed here in the State of Ohio and throughout the United States through the institution of fraudulent foreclosure actions and regular and systematic violations of foreclosure laws in both judicial and non-judicial foreclosure jurisdictions, resulting in a nationalized fraud which has resulted in damages to this Plaintiff.

## II. The Judicial Foreclosure Process

**13.** The foreclosure process is instituted, depending on the jurisdiction, by either a judicial or non-judicial process.

**14.** In "judicial" foreclosure states, the foreclosing party initiates the foreclosure process by the filing of a civil action for foreclosure, which normally consists of a Summons and Complaint. The Complaint may contain attachments, but all judicial states require that the foreclosing party plead and prove that it is the holder or person entitled to enforce the Note which is secured by the Mortgage in order to seek the remedy of foreclosure.

**15.** Defendants were thus required, pursuant to applicable law and rules of court, to plead, in good faith, and prove, by the requisite evidentiary standards, legal entitlement to foreclose in order to seek the remedy of foreclosure in the judicial states of OHIO, and Ohio State which is the state where the Plaintiff Domiciles.

## III. Material Facts As To Fraudulent Practices of Defendants

### A. The "Successor In Interest to GMAC" Material Misrepresentation

**16.** Prior to October 25, 2006, GMAC Mortgage Corporation (hereafter "GMAC") was a banking institution which, among other things, originated mortgage loans throughout the United States, and originated the mortgage loan of the Plaintiff herein. **17.** On or about October 25, 2006, GMAC "failed" and was subjected to Receivership by the Federal Deposit Insurance

Corporation (FDIC). **18.** After October 25, 2006, the GMAC Stopped Existing and a new company name for GMAC, "ALLY FINANCIAL INC." came into the picture, but by law only someone that owns an Asset can transfer, Assign, or Sell, that Asset. FDIC has become the Receivership for GMAC Mortgage Corporation, but not the Promissory Note. The ownership of this asset doesn't belong to ALLY/GMAC Mortgage Corporation, JP MORGAN, GMAC LLC, GREEN TREE, LLC, OCWEN, LLC, or Defendants, DITECH the current Servicer. ( **See Witham VS Western Bank ( FDIC ) Case No. 198617930 Judge Grant Dorfman** ). Plaintiff could not find any proof that FDIC sold any "assets" of GMAC to Defendants for Green Tree which were set forth within a Purchase & Assumption Agreement ("P&A") between Defendant GMAC and the FDIC. **19.** Plaintiff is informed and believes, and thereon alleges that because of the Defendants negligence and willful disregard during GMAC's bankruptcy that the opportunity for regress was missed as the Plaintiff was never given proper notice of **The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")** which was enacted during the savings and loan insolvency crisis to enable the FDIC to efficiently and expeditiously wind up the affairs of failed financial institutions. See Lewis v. Boyd, 398 F.3d 735, 739 (6th Cir. 2005). The Plaintiff was never given notice by mail or by email of Section 1821 of FIRREA that establishes an administrative process for handling claims against a failed bank that has been placed into receivership ( 12 U.S.C. § 1821(d)). Because GMAC Mortgage Corporation is a failed bank and therefore placed into FDIC receivership, it was the duty of the successor of GMAC via FDIC or its successor to make sure that the Plaintiff received that notice informing the Plaintiff of her options for regress. It was also the duty of the FDIC to inform the Plaintiff that the FDIC was now to act instead for GMAC and that they were to be properly substituted as "GMAC" (originator of the Loan); thereby, taking away the Plaintiff's right to have exhausted **FIRREA's** administrative claims process. The Plaintiff through research in the month of January 2016 while her consultant was preparing her complaint discovered this remedy years too late. Plaintiff has suffered a devastating miscarriage of justice. As a lay-person, the Plaintiff had no idea or clue that the Sixth Circuit had this following explanation: "Upon its appointment as receiver, FDIC is required to publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication( 12 U.S.C. § 1821(d)(3)(B)). FDIC is also required to mail

1    notice to all known creditors of the failed institution. [12 U.S.C.] § 1821(d)(3)(C). FDIC for

2    GMAC Mortgage Corporation individually or jointly also failed to mail the Plaintiff notice of

3    the failed institutions remedy fo21r Creditors giving the Plaintiff regress and because of this

4    neglect, the Plaintiff missed the opportunity of the 180 days from the date of filing to allow or

5    disallow claims. [12 U.S.C.] § 1821(d)(5)(A)(i). Claimant can't act upon a remedy without

6    notice that such remedy exists. On January 22, 2016 Plaintiff through research came upon the

7    above mentioned notice and this following notice, "Claimants have sixty days from the date of

8    disallowance, or from the expiration of the 180-day administrative decision deadline, within

9    which to seek judicial review in an appropriate United States district court. [12 U.S.C.] §

10   1821(d)(6)(A). Village of Oakwood v. State Bank and Trust Co., 539 F.3d 373, 384-85 (6th

11   Cir. 2008) (citation omitted)." FDIC failed to publish and Mail the required notice under 12

12   U.S.C. § 1821(d)(3)(B)(i) for GMAC to the Plaintiff/creditor to present their administrative

13   claim to the FDIC 2:12-cv-11642-VAR-MJH Doc # 5 Filed 06/28/12 Pg. 6 of 10 Pg. ID 426 7

14   by March 10, 2010 (Doc. 3-10). It is clear that the plaintiff did not get the honorable and just

15   opportunity of notice in order to file an administrative claim by the bar date, and, in fact, will

16   never have the opportunity to file an administrative claim with the FDIC. Plaintiff is seeking

17   relief now. Plaintiff was always told by GMAC and the other Servicers that she was the debtor,

18   she was never told by the Defendants that she was the Creditor—another act of fraudulent

19   concealment and breach of fiduciary duties perpetrated upon the Plaintiff.

20   Since the closure of GMAC, the FDIC as receiver has controlled GMAC Mortgage

21   Corporation." [Emphasis in original]. "The FDIC's practice in repudiating contracts has most

22   often been to pay principal and interest to date of payment, **unless the assets have been**

23   **fraudulently conveyed (transferred) or conveyed to an affiliate under improper**

24   **circumstances**. However, the FDIC has the power to repudiate contracts that it characterizes as

25   secured borrowings and, thereby, reclaim transferred assets by paying principal and interest to

26   the date of receivership, which may be as many as 180 days before the date of payment.

27     **20.** Defendant DITECH, both directly and indirectly as the alleged "servicer (that being

28   Defendants for DITECH et al.) have instituted foreclosure proceedings throughout the United

States in a judicial jurisdiction where it is claiming, in an official capacity via its Attorney(s)

Reimer, Arnovitz, Chernek & Jeffrey Co., LPA. via its court filing letter/document, to be filed

in the public records and sent to the Plaintiff herein by mail, to be the "successor in interest to

GMAC Mortgage Corporation" for purposes of attempting to justify legal entitlement to institute foreclosure proceedings, doing so based upon nothing more than either (a) unsworn allegation unsupported by any evidence, and it has never been established or qualified as to what the FDIC "sold" to Defendants/DITECH if anything under their Receivership, and which "Affidavit" if any does not contain, as part of said "Affidavit", any recitation or proof that the specific loan sought to be foreclosed was in fact sold by the FDIC to Defendants for DITECH or that the interest therein was otherwise legally acquired by Defendant DITECH. **21.** In no instance, does judicial foreclosure efforts, have Defendants DITECH servicer, Defendant GREEN TREE, Defendant WALTER INVESTMENT MANAGEMENT CORPORATION in bringing any supported allegations of "successor in interest to GMAC" with any Schedule of Assets purchased from the FDIC showing that the specific loan sought to be foreclosed was in fact part of the alleged "purchase of assets" by the Defendants from the FDIC or other proof that Defendants legally acquired the full and unencumbered interest in either the Note or the mortgage instrument (Mortgage). Defendants, ALLY FINANCIAL CO. if they are claiming to be the originator of the loan/debt, let them come forth now and prove to be the holder of the Promissory Note and prove that it has not been converted into a Security Certificate, etc.

## B. Specific Material Facts as to Named Plaintiff

**22.** The specific pattern of criminal activity of Defendants which has been perpetrated upon the Plaintiff herein through fraudulent practices and the use of the mails and, in certain instances, actions involving perjury, is demonstrated by the specific instances of conduct set forth below, which conduct was executed with the same intent and in the same manner and means and with the same intended victim and intended results. **23.** As to Plaintiff Sakina Maysan Bey ex Relatione SHEILA MARIE HAYES: Defendants instituted an action to foreclose on a loan which had been originated by GMAC now under the Receivership of the FDIC, doing so without and Assignment and with no evidence that Defendant DITECH legally acquired an ownership or holder interest in the loan. The first copy of the letter mailed to the Plaintiff threatening foreclosure contained no endorsement; the second version of the letter contained two initial on the "endorsement" with no signature. The Assignment which says "DITECH as successor in interest to GREEN TREE" is fraudulent and thus there is a fraudulent transfer

which assigned DITECH as Trustee for a GMAC securitization, on date unknown. There is no indication that the name DITECH is being used for FDIC. Furthermore, DITECH FINANCIAL, LLC is a Collection Agency with NO License to do Business as a Mortgage Company in the State of Ohio. Here are the two items found as it applies to DITECH's ability to do business in Ohio: **1) Ohio Mortgage Broker Act Mortgage Banker Exemption # MBMB.850171.000; 2) Ohio Department of Insurance**. Neither of these have anything to do with a license to operate and hold Assets of Mortgages that contain the Plaintiff's property.

## COUNT I: COMMON LAW FRAUD

**24.** Plaintiff reaffirms and realleges paragraphs 1 through 23 hereinabove as if set forth more fully hereinbelow. **25.** At all times material hereto, Defendants for DITECH and GREEN TREE, WALTER INVESTMENT MANAGEMENT CORPORATION had actual knowledge that their written statements as to alleged ownership of the Plaintiff's mortgage loan and the legal entitlement to demand monies/species from Plaintiff and institute foreclosure proceedings were false statements of material fact which were false when made and known by said Defendants to be false when made. **26.** Defendants for DITECH, WALTER INVESTMENT MANAGEMENT CORPORATION and GREEN TREE, made the subject false statements with the specific intent that Plaintiff relies thereon and with the separate specific intent, was unknown to the Plaintiff at the time, to defraud the Plaintiff. **27.** Plaintiff, not being in the mortgage lending or mortgage loan acquisition businesses, reasonably relied upon the written statements of Defendants for DITECH, WALTER INVESTMENT MANAGEMENT CORPORATION and GREEN TREE and acted thereon, including but not limited to paying in federal reserve notes (which by constitutional law and by its very definition is not money/specie) to said Defendants when demanded thereby until the defendants acquiesced by non-response to Writs and Fiduciary Request Reconveyance(s), leaving the Plaintiff with no regress or opportunity to cure the accusations of Default. **28.** As a direct and proximate result of the actions and course of conduct of Defendants, Plaintiff has suffered damages mentally and emotionally. **29.** The fraudulent conduct engaged in by the Defendants constitutes a separate and independent tort, separate and apart from any breach of any contract. The deliberate and

1  concerted actions engaged in by the Defendants as set forth above and under the circumstances

2  set forth above constitutes the type of fraud for which Plaintiff demands the assessment of her

3  filing fees against the Defendants. WHEREFORE, Plaintiff demands the entry of Final

4  Judgment against the Defendants for compensatory damages, interest, costs, fees, and any other

5  and further relief which is just and proper under the totality of the circumstances.

6

7                          **COUNT II: CONSPIRACY TO DEFRAUD**

8

9  **30.** Plaintiff reaffirms and realleges paragraphs 1 through 29 hereinabove as if set forth more

10  fully hereinbelow. **31.** At all times material hereto, Defendants for DITECH, WALTER

11  INVESTMENT MANAGEMENT and GREEN TREE agreed, between and among themselves

12  and in combination with each other and various agents identified hereinbelow, as to each overt

13  act in furtherance of the conspiracy and enterprise, to engage in unlawful actions for a common

14  purpose, to wit: to perpetrate a fraud upon Plaintiff through fraudulent verbal threats of

15  foreclosure and fraudulent written threats of foreclosure filings whereby the Defendants would

16  obtain the use and benefit, under fraudulent pretenses, of the Plaintiff's real property at the

17  expense of the Plaintiff and without compensating the Plaintiff therefore; to unlawfully convert

18  the Plaintiff's real property and permanently deprive the Plaintiff thereof; and to cause all

19  deleterious consequences of the Defendants' actions to be saddled upon the Plaintiff, which

20  consequences include but are not limited to fear of the loss of real property; the incurring of

21  expenses; and the adverse effects of threat, duress and coercion of default and foreclosure

22  placed on the Plaintiff's credit report by the Defendants causing bouts of depression.

23  **32.** Defendants agreed to engage in these unlawful actions with various agents including but

24  not limited to all of their servicers for purposes of instituting and furthering a fraudulent

25  foreclosure in a judicial jurisdiction, which Defendants and their agents being involved in the

26  various transactions and with the Defendants participating in each overt act in furtherance of

27  the conspiracy to defraud and convert, and did so in order to accomplish the objective of

28  defrauding the Plaintiff and misappropriating federal reserve notes FRNs. (see violations under

**"Count VI Crimes Against Humanity"**) and real property from the Plaintiff. **33.** As a direct

and proximate result of the overt, concerted, and conspiratorial actions of the Defendants

through and with their agents, the Plaintiff has suffered significant damages within

1    jurisdictional limit of this Court. **34.** The conspiracy to defraud and convert engaged in by the

2    Defendants constitutes a separate and distinct independent tort which is separate and apart from

3    any breach of any contract. **35.** The deliberate and concerted actions engaged in by the

4    Defendants as set forth above and under the circumstances set forth above constitutes the type

5    of fraud for which the Plaintiff demands the assessment of her damages and fees against the

6    Defendants. WHEREFORE, the Plaintiff demands the entry of Final Judgment against the

7    Defendants for compensatory damages, interest, costs, fees, and any other and further relief

8    which is just and proper under the totality of the circumstances.

9

10                                    **COUNT III:**

11            **VIOLATIONS OF (OHIO CORRUPT PRACTICES ACT ("OCPA"),**

12                              **R.C. 2923.31, ET SEQ.)**

13    **36.** Plaintiff reaffirms paragraphs 1 through 35 hereinabove as if set forth more fully

14    hereinbelow. **37.** This is an action for violations of the OHIO CORRUPT PRACTICES ACT

15    ("OCPA"), R.C. 2923.31, ET SEQ.), also known as the Organized Crime Control Act of 1970,"

16    84 Stat. 941, 18 U.S.C. 1961(1)(B), (1)(C), (1)(D), and (1)(E), as amended and Plaintiff asserts

17    claims for relief under 18 U.S.C. §§ 1962(c)-(d), and 1964(c). 18 U.S.C. § 1962 which

18    provides, in pertinent part: (c) It shall be unlawful for any person employed by or associated

19    with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

20    to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

21    through a pattern of racketeering activity or collection of unlawful debt. (d) It shall be unlawful

22    for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

23    section. 18 U.S.C. § 1926. Section 1964(c) of RICO gives individuals a private right of action

24    with recourse to treble damages and reasonable attorney fees. In order to demonstrate a

25    violation under RICO, a plaintiff must establish the following elements: 1) that there were two

26    or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between

27    the pattern of racketeering activity and the enterprise; and 4) that an injury to business or

28    property occurred as a result of the above three factors. VanDenBroeck v. Commonpoint

     Mortgage Co., 210 F.3d 696, 699 (6th Cir. 2000). Further, the United States Supreme Court has

     held that "in order to be held responsible under the Act, a defendant must have not only

     participated in the scheme, but must have also participated in the operation or management of

1   the enterprise itself." Id. (citing Reves v. Ernst & Young, 507 U.S. 170, 183 (1993)). If a

2   plaintiff fails to meet one of the RICO requirements, the RICO claim fails. Michalak v.

3   Edwards, Nos. 96-1970, 96-1972, 1997 WL 561424, * 2 (6th Cir. Sept. 9, 1997) (citing

4   Sedima, S.P.R.L. v. Imrex Corp., 473 U.S. 479 (1985)).  As recognized previously, pursuant to

5   18 U.S.C. § 1962(c), "it shall be unlawful for any person employed by or associated with any

6   enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such

7   enterprise's affairs through a pattern of racketeering activity . . ." Id. Section 1961(4) broadly

8   defines an enterprise as "any individual, partnership, corporation, association, or other legal

9   entity, and any union or group of individuals associated in fact although not a legal entity." 18

10   U.S.C. § 1961(4). An "'enterprise' is not the 'pattern of racketeering activity;' it is an entity

11   separate and apart from the pattern of activity in which it engages." United States v. Turkette,

12   452 U.S. 576, 583 (1981). **38.** However, a plaintiff may allege the separate elements of

13   "enterprise" and "pattern of racketeering activity" through the same facts. Begala v. PNC Bank,

14   Ohio, N.A., 214 F.3d 776, 781-82 (6th Cir. 2000) (citing United States v. Qaoud, 777 F.2d

15   1105, 1115 (6th Cir. 1985)). 43. The actions of the Defendants were specifically directed to the

16   named Plaintiff herein. **39.** In order to accomplish their objective, Defendants developed and

17   were part of an enterprise, which consisted of the Defendants and their agents including but not

18   limited to various law Firms and "Trustee Sale" companies, which worked together and in

19   concert at the direction of the Defendants for the specific purpose of furthering the pattern of

20   criminal activity set forth herein, including notary fraud and a regular pattern and practice of

21   filing false and perjured documents in the public records to institute a further fraudulent

22   foreclosure threat and steal residential real property from its owner. **40.** An association-in-fact

23   enterprise can be proven by showing (1) that the associated persons formed an ongoing

24   organization, formal or informal; (2) that they functioned as a continuing unit; and 3) that the

25   organization was separate from the pattern of racketeering activity in which it engaged.

26   VanDenBroeck, 210 F.3d at 699 (citing Frank v. D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993).

27   There must be "an organizational pattern or system of authority that provides a mechanism for

28   directing the group's affairs on a continuing, rather than ad hoc, basis." United States v. Tocco,

200 F.3d 401, 425 (6th Cir. 2000). "Simply conspiring to commit a fraud is not enough to

trigger the Act if the parties are not organized in a fashion that would enable them to function

as a racketeering organization for other purposes." Id. "The command system of a Mafia family

**COMPLAINT**

1    is an example of the type of structure' that is distinct from the pattern of racketeering activity."

2    Tocco, 200 F.3d at 425 (quoting United States v. Bledsoe, 674 F.2d 647 (8th Cir.), cert. denied

3    sub nom. Phillips v. United States, 459 U.S. 1040 (1982)). Thus, the focus of the inquiry on

4    organizational structure is whether the enterprise encompasses more than what is necessary to

5    commit the predicate RICO offense. Id. **41.** As set forth hereinbelow, the Defendants, through

6    their predicate acts and pattern of criminal activity which the Defendants engaged in

7    throughout the United States on a regular and continuous basis and with a defined and

8    intentional purpose, conducted a nationalized fraud, the victims of which were the American

9    homeowner including the Plaintiff herein. **42.** As set forth hereinabove and further

10   hereinbelow, Defendants JEFFREY J. BROWN acting as CHIEF EXECUTIVE OFFICER

11   (CEO) & DIRECTOR, CHRISTOPHER A.  HALMY acting as CHIEF FINANCIAL

12   OFFICER (CFO) for GMAC/ALLY FINANCIAL INC. et. al,  DONALD E. POWELL acting

13   as  CHAIRMAN  OF  THE  BOARD  for    the  FEDERAL  DEPOSIT  INSURANCE

14   CORPORATION (FDIC) et. al. ,   JAMES L. DIMON acting as CHAIRMAN OF THE

15   BOARD, PRESIDENT, (CEO), MARIANNE LAKE acting as (CFO) of JPMORGAN CHASE

16   & CO., et. al., RONALD M FARIS acting as PRESIDENT, CEO and MICHAEL R.

17   BOURQUE, Jr. acting as CFO of OCWEN FINANCIAL CORPORATION, BRUCE DARYL

18   acting as CEO for DITECH FINANICAL, LLC N.A., et. al ; KEITH ANDERSON acting as

19   CEO/PRESIDENT for GREEN TREE, LLC N.A. et al, DENMAR DIXON acting as CEO and

20   GARY L TILLETT acting as CFO for WALTER INVESTMENT MANAGEMENT, et al, as

21   the controlling RICO and controlling enterprises Defendants, together with the active aid,

22   assistance, and agreement of additional RICO and enterprise Defendants for JEFFREY J.

23   BROWN acting as CHIEF EXECUTIVE OFFICER (CEO) & DIRECTOR, CHRISTOPHER

24   A. HALMY acting as CHIEF FINANCIAL OFFICER (CFO) for GMAC/ALLY FINANCIAL

25   INC. et. al, DONALD E. POWELL acting as CHAIRMAN OF THE BOARD for  the

26   FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC) et. al. ,  JAMES L. DIMON

27   acting as CHAIRMAN OF THE BOARD, PRESIDENT, (CEO), MARIANNE LAKE acting as

28   (CFO) of JPMORGAN CHASE & CO., et. al., RONALD M FARIS acting as PRESIDENT,

CEO and MICHAEL R. BOURQUE, Jr. acting as CFO of OCWEN FINANCIAL

CORPORATION, BRUCE DARYL acting as CEO for DITECH FINANICAL, LLC N.A., et.

al ; KEITH ANDERSON acting as CEO/PRESIDENT for GREEN TREE, LLC N.A. et al,

DENMAR DIXON acting as CEO and GARY L TILLETT acting as CFO for WALTER INVESTMENT MANAGEMENT, et al and their respective agents, repeatedly, deliberately, intentionally, conspiratorially and with criminal intent received proceeds both directly and indirectly from a pattern of criminal activity through theft, fraudulent practices, false pretenses, fraud, and perjury in the acquisition of title to and claimed rights, interest, and equity in real property of Land that is the Ancestral Estate of an Aboriginal Indigenous Moor American. **43.** As further set forth herein, the RICO Defendants who were employed by and associated with the enterprise conducted and participated in such enterprise through a pattern of criminal activity including but not limited to a nationalized pattern of filing false and perjured documents in the public records; instituting false and fraudulent threats of foreclosure proceeding letters to create fear through Threat Duress and Coercion on the Plaintiff; and deliberately ignoring and failing to comply with applicable foreclosure laws. **44.** As set forth hereinabove and hereinbelow, the RICO Defendants also conspired and endeavored to violate the activities prohibited by OHIO CORRUPT PRACTICES ACT ("OCPA"), R.C. 2923.31, ET SEQ.). The RICO Defendants specifically engaged in their pattern of criminal activity at the expense of the Plaintiff and for their own benefit. **45.** The RICO Defendants engaged in their pattern of criminal activity through and arising out of a series of transactions and acts in the state of Ohio identified above (with no license which is twice as criminal), which transactions and acts included the fraudulent foreclosure filings threat, wrongful misrepresentations as to FREDDIE MAC, perjured documents, and intentional failure to comply with foreclosure laws as set forth above. **46.** As such, the RICO Defendants have violated OCPA. R.C. 2923.31, with said Defendants' actions: (a) having the same intent (that being to obtain, through a pattern of theft, fraud, fraudulent activity, and false pretenses, monies/species (that the Plaintiff does not have, is not allowed to have, and never had in her entire lifetime due to the Executive Order Issued April 5, 1933 by Franklin D Roosevelt Forbidding The Hoarding of Gold Coin, Gold Bullion and Gold Certificates – See the definition of Money) and real property from an innocent and unknowing homeowner and rightfully the property thereof); (b) having the same results ( and that being the wrongful foreclosure letter of the Plaintiff's real property to further the enterprise of the RICO Defendants); (c) having the same victim (homeowner with a mortgage loan); and (d) having the same methods of commission (that being theft, fraud, false pretenses, perjury, and mail fraud). **47.** The actions of the RICO Defendants are interrelated by

1  the distinguishing characteristic of the fact that RICO Defendants for JEFFREY J. BROWN
2  acting as CHIEF EXECUTIVE OFFICER (CEO) & DIRECTOR, CHRISTOPHER A.
3  HALMY acting as CHIEF FINANCIAL OFFICER (CFO) for GMAC/ALLY FINANCIAL
4  INC. et. al,  DONALD E. POWELL acting as CHAIRMAN OF THE BOARD for  the
5  FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC) et. al. ,  JAMES L. DIMON
6  acting as CHAIRMAN OF THE BOARD, PRESIDENT, (CEO), MARIANNE LAKE acting as
7  (CFO) of JPMORGAN CHASE & CO., et. al. , RONALD M FARIS acting as
8  PRESIDENT,CEO   and MICHAEL R. BOURQUE, Jr. acting as CFO of OCWEN
9  FINANCIAL CORPORATION, BRUCE DARYL acting as CEO for DITECH FINANICAL,
10  LLC N.A., et. al ; KEITH ANDERSON acting as CEO/PRESIDENT for GREEN TREE, LLC
11  N.A. et al, DENMAR DIXON acting as CEO and GARY L TILLETT acting as CFO for
12  WALTER INVESTMENT MANAGEMENT, et al were all related persons as to all of the
13  RICO Defendants by the fact that RICO Defendant DITECH and their respective agents were
14  substantially under the direction, ownership, or control, either directly or indirectly, of RICO
15  Defendants for JEFFREY J. BROWN acting as CHIEF EXECUTIVE OFFICER (CEO) &
16  DIRECTOR, CHRISTOPHER A.  HALMY acting as CHIEF FINANCIAL OFFICER (CFO)
17  for GMAC/ALLY FINANCIAL INC. et. al,  DONALD E. POWELL acting as CHAIRMAN
18  OF THE BOARD for  the FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC) et.
19  al. ,  JAMES L. DIMON acting as CHAIRMAN OF THE BOARD, PRESIDENT, (CEO),
20  MARIANNE LAKE acting as (CFO) of JPMORGAN CHASE & CO., et. al. , RONALD M
21  FARIS acting as PRESIDENT,CEO  and MICHAEL R. BOURQUE, Jr. acting as CFO of
22  OCWEN FINANCIAL CORPORATION, BRUCE DARYL acting as CEO for DITECH
23  FINANICAL, LLC N.A., et. al ; KEITH ANDERSON acting as CEO/PRESIDENT for
24  GREEN TREE, LLC N.A. et al, DENMAR DIXON acting as CEO and GARY L TILLETT
25  acting as CFO for WALTER INVESTMENT MANAGEMENT, et al **48**. As set forth above,
26  Plaintiff has been injured and has suffered significant damages by reason of the RICO
27  Defendants' numerous violations of R.C. 2923.31. **49.** Plaintiff is thus entitled to demand and
28  do demand threefold actual damages against the RICO Defendants in addition to all fees and
costs. WHEREFORE, Plaintiff demands the entry of Final Judgment against the Defendants for
compensatory damages, interest, costs, fees, and any other and further relief which is just and
proper under the totality of the circumstances. Defendants set out to commit the RICO of false

**COMPLAINT**

bookkeeping entries when they did the following: 1) They claimed that they gave the seller a check written from their cash account, a credit entry to cash was made for $36,000 – which they purport constituted the loan to the Plaintiff and the check to the seller to buy the house. 2) To record the bank receiving the Plaintiff's Promissory Note (money equivalent) as a bank asset, GMAC made a debit entry in their Mortgage Loans Receivables Account for $36,000. Note: The fraud continued as follows: The banks books are in balance, while the Plaintiff is deceived into believing she had a loan. But Plaintiff is now aware through 12 U.S.C. 1813 (l)(1), that she was supposed to get credit for her Negotiable Instrument  the Promissory Note. There is no proof anywhere or any record of GMAC depositing a $36,000 check into Plaintiff's Account. Nothing showing proof anywhere to substantiate that those funds were actually received from the Plaintiff to purchase the home from GMAC in the form of a bank credit to her account for the instrument nor did she receive a receipt. More importantly, under both 12 U.S.C. 1813(l) (1) AND 12 U.S.C. 1831n (GAAP), the bank has to account for receiving a borrower's negotiable instrument. 3) The bank has to record receiving the Plaintiff's promissory note (negotiable instrument), yet they credited a DDA in her name for the amount of the note, $36,000. They changed the intent of the agreement and changed the promissory note so as to fund the check to the seller. 4) The bank most likely showed the seller receiving the check by debiting cash (recorded as an asset). This is fraud to the highest degree because after the GMAC's cash account cancelled out they will never lose anything from their cooking of the books. What are left on the books are the same journal entries the Federal Reserve requires from Modern Money that should be made by banks when they make loans: "What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transactional accounts. Loans (assets) and deposits (liabilities) both rise" FEDERAL RESERVE BANK OF CHICAGO – MODERN MONEY MECHANICS states that if a business is active, the banks with excess reserves probably will have opportunities to loan the currency. Of course, they do not really pay out loans from the money they receive as deposits. If they did this, no additional money would be created. What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transactional accounts. Loans (assets) and deposits (liabilities) both rise by the same currency amount. Reserves are unchanged by the loan transactions. But the deposit credits constitute new additions to the total deposits of the banking system.

**COMPLAINT**

1
2
3

## COUNT IV: LACK OF STANDING TO FORECLOSURE

4

5  **50.** Plaintiff reaffirms paragraphs 1 through 49 hereinabove as if set forth more fully
6      hereinbelow. **51**. Sakina Maysan Bey ex Relatione SHEILA MARIE HAYES, Plaintiff is
7      informed and believes, and thereon alleges that, the corporation GMAC, et al is a
8      corporation, that did business in the County of MAHONING, State of OHIO and was the
9      purported Sponsor for Securitized Trust and/or a purported participant in the imperfect
10     securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described
11     in this AFFADAVIT, not DITECH as these Defendants are perpetrating a fraud as the true
12     holders of the Note and Mortgage that must stay together. That said; it is the Plaintiff that
13     holds the highest **Allodial Aboriginal Clear Perfect Title of Conveyance** not the third
14     party servicer, DITECH.

15  **52.** As stated above, Plaintiff after many attempts to verify the validity of the alleged loan and
16     to make sure that there was no impropriety, underhanded fraud, or unfair Lending Practices,
17     served the Defendants DITECH/GREEN TREE/WALTER INVESTMENT
18     MANAGEMENT CORPORATION and their failure to respond to all requests, brought
19     about the Affidavit of Fact Notice of Default Judgement along with a copy showing proof
20     of the Plaintiff's highest and superior Title/Deed of Trust. **The requests consisted of the**
21     **following:** Number (1) Produce the Originals or Certified and Verified Official Copies of
22     the Original Loan-Related Documents (including all related papers, electronic
23     communications and E-mails, etc.,) as stipulated by Law. Number (2) To schedule a timely
24     and transparent Meeting establishing an opportunity for the Plaintiff, her Consul, and/or her
25     CPA to make a thorough Physical Inspection of the Loan-related Documents, and all other
26     related instruments, so as to enable the Plaintiff and her Consul, or CPA to physically
27     Examine; to Verify; to Confirm; and to Witness the same instruments; and to Rebut any
28     mistakes or misrepresentations; to compare her records, facts and information; and to
       correct the same for the Public Record to make sure that the Promissory Note did not split
       from the Mortgage. The United States Supreme Court established the basic rule early in the
       1873 case of Carpenter v. Longan: "The note and mortgage are inseparable; the former as

**COMPLAINT**

1    essential, the latter as an incident (*Jackson v. Blodget,* 5 Cowan 205; *Jackson v. Willard,* 4

2    Johnson 43.). Also, in Fed. Home Loan Mtge. Corp. v. Schwartzwald, this court greatly

3    clarified disparate Ohio foreclosure decisions by finding that a party must have standing at

4    the time the foreclosure complaint is filed. In Schwartzwald, the court found that: "Federal

5    Home Loan concedes that there is no evidence that it had suffered any injury at the time it

6    commenced this foreclosure action. Thus, because it failed to establish an interest in the

7    note or mortgage at the time it filed suit, it had no standing to invoke the jurisdiction of the

8    common pleas court. F'eel. Zfvme Loan 11ilort. Corp. v. Schwartzwald, 134 Ohio St.3d 13,

9    2012-Ohio-5017,T28. Because of the Defendants failure to provide evidence, there appears

10   to be too much fraud involved prompting the Plaintiff request the original documents. An

11   assignment of the note carries the mortgage with it, while an assignment of the latter alone

12   is a nullity; therefore, the mortgage can have no separate existence.  Number (3) Plaintiff

13   requested Defendants and their Assigns for the Record to produce the following Records,

14   Information and Documents as initially noted and related to the alleged Loan in this alleged

15   claim, bearing the Account Number **0003052644**; and any future related Case Number

16   known and unknown, which are in controversy—all inter-dependent, inter-related

17   documents, and all associated Instruments attached thereto; covering all the associated Files

18   and Notes and Instruments constructed from the initiation of the alleged Loan up and unto

19   the present day; and reflecting all related and accumulated documents, notes and data: **A.**

20   Disclose and Produce the Original Promissory Note (being Lawful, legible and verifiable

21   proof of evidence (exposing the front and the back) and marked with the Account Number,

22   0003052644, with the clear signatures of the Lender(s) and all the evidence associated with

23   the Original Loan, indicating the exchange of Substance or Specie alleged to have been

24   issued from the Defendants,  ( including "DITECH") and given to the Borrower Sakina

25   Maysan Bey ex Relatione SHEILA MARIE HAYES( hereby known interchangeably as

26   either Borrower and or Plaintiff). **B.** TO PRODUCE ANY AND ALL 'Allonge' or Riders;

27   any 'Bills of Exchange'; and any other 'Promissory Note(s) (exposing the front(s) and the

28   back(s) complete with any "Affixations' or 'Allocations' attached to, or associated with, the

Borrower's 'Original Promissory Note' and used for 'Endorsements'. **C.** to produce and

disclose all Bookkeeping Journal Entries associated with the alleged Loan given to the

Plaintiff, Sakina Maysan Bey Ex Relatione SHEILA MARIE HAYES. Including all the

complete names, the addresses, and the locations, and the business contacts of all the acting Trustee(s), Feoffers and/or the affirmed Surety Holders. **D**. Produce, disclose and reveal the 'Promissory Note' associated with the Original Loan and to reveal and disclose all other Notes related in any other way to the Borrower Sakina Maysan Bey Ex Relatione SHEILA MARIE HAYES. **E.** Produce Evidence of the Insurance Policy that was constructed, associated with, or put in place on, or against, the Borrower/Plaintiff's 'Promissory Note' and associated with the Loan bearing the Account Number 00030526443. **F.** Produce all call reports and any other related 'Notes' or instruments made or constructed for the entire period covering the Loan. **G.** Produce the documented evidence of the original 'Deposit Slip' issued for the Deposit of the Borrower's "Promissory Note' and associated with the Loan. **H.** Produce the Original Order authorizing the withdrawal of Funds from the Borrower's 'Promissory Note' Deposit Account. **I.** Produce the Account Number and the Source from which the money came to 'Fund' the original 'Check' given to the 'Borrower'. **J.** Produce Verification evidence, and proof that the Borrower's Promissory Note was a **Gift** to the **Lender** from the **Borrower**; and that the same was disclosed to the borrower Sakina Maysan Bey Ex Relatione SHEILA MARIE HAYES. **K.** Produce the full and complete Name(s) and the Address(s) of the current Holder(s) of the Borrower's Promissory Note associated with the alleged Loan. **L.** Produce full and complete Name(s) and the Address(s) of the Lender's CPA and Auditor or any other Holder or Record-Keeper for the entire period covering the Execution of the Mortgage or Loan. The Writ was a Lawful Demand and Request and was issued under the 'Rules of Discovery' and forwarded to **KEITH ANDERSON ACTING AS CEO/PRESIDENT FOR GREEN TREE SERVICING, LLC; BRUCE DARYL, DENMAR DIXON, GARY L TILLETT, & VANESSA WEST ACTING AS CUSTOMER SERVICE CORRESPONDENCE SUPERVISOR, ET. AL AND ALL ACTING AS AGENTS FOR WALTER INVESTMENT CORPORATION/DITECH FINANCIAL, LLC/GREENTREE SERVICING, NA, ET AL**, and all aforementioned Defendants of GMAC, the originator of the loan in question sold the interest if there were any, which could not be located to FDIC who if they found any would have sold it to Green Tree Servicing, LLC, but no evidence of that was offered up after repeated request from the Plaintiff to Walter Investment Management Corporation/DITECH. The Writ stands as Firm and Lawful Evidence of the Borrower's exercising her due process rights to Request, Discovery and

21

**COMPLAINT**

1    Disclosure; and establishes For The Record her Honorable and Good Faith attempt to clear
2    up any flawed entries; any insensate misrepresentations; or any other mis-prints, mistakes,
3    frauds, or confusion concerning her intent to make clear, unvarnished, and corrective
4    resolutions in this Loan or Default matter. The request must be satisfied before accepting
5    any vague assumptions; any other misrepresentations; any secondary contracts; and before
6    the claimants taking any further actions.  Due to the Defendant's acquiescence, the
7    questions of fraud now stand as truth. The Defendants whole or in part did with willful
8    Non-Disclosure and Default in this matter after several attempts to receive all requested
9    specific evidence materially and expediently return the same Request, Discovery and
10   Disclosure (as presented) and with all twelve (12) points or issues fully answered within the
11   allotted twenty (20) days of Receipt of the same.  Because of the Defendants' failure to
12   answer three times a Writ in the Nature of Request Discovery, Fiduciary Request
13   Reconveyance; these defendants have all acquiesced for failure to respond within the
14   allotted time as stated earlier. (see Exhibit A).   Therefore, the Plaintiff had no other
15   recourse than to send the Defendants an "Affidavit of Fact-Notice of Default Judgement"
16   and to file this Affidavit/Complaint in Federal Court an Article III Court Venue that
17   upholds the Constitution. Any untoward or deceptive acts; misrepresentations; diversions;
18   deceitful redirections; or any incomplete or non-answered Response to the questions
19   presented to the Representatives, Holders or Trustees, etc., will be considered an
20   affirmation of secrete, disguise, and disingenuous intent (RICO) Any avoidance of truth
21   shall be considered an "inducement to Fraud'; and the said 'Failure of Response' on the
22   part of Representatives, Trustees, Feoffers, or Assigns, neglecting their responsibilities to
23   answer every one (and all of the specific twelve (12) above-noted Loan—points) shall
24   constitute a violation of Trust, a breach Trust, and  tacit acquiescence, established from the
25   record by non-compliance. The same dispensations shall be published for the public
26   Record.

27   **53.** At all times relevant to this action, Plaintiff's Ancestral home land handed down to her by
28   birthright Begins at ( **point 41 degrees 7 minutes 9 seconds NORTH: 80 DEGREES 36 MINUTES 59 SECONDS west, NAD 83, Ohio North Zone 3401 (feet) Northing: 534346.3498 Easting: 2487381.6799 Longitude: 80.6165611 Latitude: 41.1193410, LOT 5637 50 X 140 – contemporarily BEING corporately-designated as, or known as, House No. 1422 Lansdowne Boulevard) Lawful description**

**COMPLAINT**

and she is the Trustee of the Property located at **1422 LANSDOWNE BOULEVARD, YOUNGSTOWN, OH 44505** (the "Property" for legal description purposes only). The property was placed in a trust and was quit claimed deeded and has the highest claim in the land under Plaintiff holds the highest Allodial Aboriginal Clear Perfect Title of Conveyance. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claims some right, title, or interest in the Property. Plaintiff will amend this AFFADAVIT to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this AFFADAVIT, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

**54.** Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture. WHEREFORE, Plaintiff demands the entry of Final Judgment against the Defendants for compensatory damages, interest, costs, fees, and any other and further relief which is just and proper under the totality of the circumstances.

### COUNT V: TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

**55.** Plaintiff reaffirms and realleges paragraphs 1 through 54. hereinabove as if set forth more fully hereinbelow. **56.** This is an action for temporary and permanent injunctive relief to cease and halt all foreclosure activity by the Defendants; for temporary/preliminary injunctive relief during the pendency of this litigation and, upon prevailing on the merits, for permanent injunctive relief. **57.** Plaintiff has a clear legal right to seek temporary and permanent injunctive relief as her interest in Federal Reserve Notes (hereafter, "FRNs") (as there are no monies) and real property is being jeopardized by the actions of the Defendants through their concerted and well-entrenched pattern of criminal activity specifically engaged in to wrongfully and through fraudulent means take possession, custody, and control of certain FRNs and real property of the Plaintiff. **58.** Plaintiff has no adequate remedy at law to redress the harm arising out of the loss

**COMPLAINT**

of her unique Allodial real Ancestral Estate Property (that is in her trust entitled, "Moorish Aboriginal Trust" and recorded at the Mahoning County Auditors and the Mahoning County Recorder's Office for public recording purposes only) caused by the actions and conduct of the Defendants as set forth and identified hereinabove, and no adequate remedy at law to compel the turnover of the Plaintiff's property wrongfully misappropriated by the Defendants as identified hereinabove. **59.** Unless temporary and permanent injunctive relief is immediately granted, Plaintiff will suffer irreparable harm including the loss of her unique Allodial Real Ancestral Estate Property (that is in her trust entitled, "Moorish Aboriginal Trust" and recorded at the Mahoning County Auditors and the Mahoning County Recorder's Office for the purpose of public record only). **60.** There is no harm to the Defendants with the granting of this relief, as the Defendants never legally or lawfully acquired any interest in any of the promissory Notes or mortgage instruments related to the Plaintiff's Allodial real property, and allegedly "acquired" such interests solely through false, fraudulent, and criminal means. Denial of the requested relief would be tantamount for rewarding the RICO Defendants for their nationwide pattern of criminal activity. **61.** Any alleged harm to the Defendants, which consist of one of the largest investment banks in the world and its related servicing entity, with the granting of this relief is greatly and substantially outweighed by the actual and irreparable harm to Plaintiff in the event that the relief requested herein is not granted. **62.** The granting of the relief requested herein is in the public interest, as the consuming public of homeowners, including the Allodial Home Owner/Plaintiff, has been, is being, and will continue to be harmed by the fraudulent and wrongful conduct of the Defendants. **63.** Thus and under the totality of the circumstances, no bond should be required as a prerequisite to the granting of the relief requested herein as there are no costs or other damages which could be contemplated on the part of the Defendants with the granting of the relief requested herein for which a bond would otherwise be necessary. **64.** At least one other court in the United States which has been confronted with wrongful foreclosure practices of an entity conducting such practices on a national level has previously issued an order staying all foreclosures instituted or prosecuted by that entity pending litigation involving that entity. WHEREFORE, the Plaintiff requests that this Court immediately grant the relief requested herein and immediately enter an Order for Temporary Injunctive Relief which commands that all foreclosure activity being engaged in by the Defendants Statewide be immediately enjoined for the pendency of this litigation through

1    trial and any appeal(s), and that permanent injunctive forever barring the Defendants from

2    engaging in any illegal or unlawful foreclosure activity be entered thereafter.

3

4                           **COUNT VI: CRIMES AGAINST HUMANITY**

5    **65.** Plaintiff reaffirms and realleges paragraphs 1 through 64 hereinabove as if set forth more

6         fully hereinbelow. The Plaintiff has a Nationality and is not a 14th Amendment Ens Legis

7         U.S. Corporate/Corpse/Citizen. Defendants committed Subprime Lending Practices on the

8         So-called Blacks, Negros, Colored, African-American and other Misnomers of the

9         Autochthonous Aboriginal Indigenous Peoples of Magrib al Aqsa—the most extreme

10        west/The North Gate. The Defendants received verifiable proof that the land was the

11        Plaintiff's Ancestral Estate. Defendants ignored the proof and violated the Plaintiff's

12        Human Rights by discriminating against her due to her origin as an Asiatic, F/K/A Blacks,

13        Negros, Colored People and African American, etc. when they charged the Plaintiff more

14        than borrowers of the European origin a/k/a Whites that had the same lending risk. The

15        Historical Document by United Nations entitled, The Universal Declaration of Human

16        Rights, Article 15 (1), "Everyone has a right to a nationality" and (2) "No one shall be

17        arbitrarily deprived of his nationality nor denied the right to change his nationality." The

18        main question here is did we Aboriginal Indigenous American violate the Treaty of Peace

19        and Friendship of 1787 **Congressional Record 112th Congress (2011-2012)** that is the

20        longest running treaty in the world? The Republican Constitution Article VI states, *"All*

21        *debts contracted and engagements entered into, before the adoption of this Constitution,*

22        *shall be as valid against the United States under this Constitution, as under the*

23        *Confederation. This Constitution, and the laws of the United States which shall be made in*

24        *pursuance thereof; and all treaties made, or which shall be made, under the authority of the*

25        *United States, shall be the supreme law of the land; and the judges in every state shall be*

26        *bound thereby, anything in the Constitution or laws of any State to the contrary*

27        *notwithstanding. The Senators and Representatives before mentioned, and the members of*

28        *the several state legislatures, and all executive and judicial officers, both of the United*

          *States and of the several states, shall be bound by oath or affirmation, to support this*

          *Constitution; but no religious test shall ever be required as a qualification to any office or*

          *public trust under the United States."* Plaintiff is an American that follows the Constitution

                                             25
                                      **COMPLAINT**

1    and has also suffered fraud with the Defendant's Usury violations on an Aboriginal

2    Indigenous American.

3    **66.** Defendants were also found guilty of charging the Plaintiff of called African-American

4    status a riskier subprime mortgage and higher interest rates than the people of European

5    Origin and decent and this has been a pattern with GMAC, Green Tree, DITECH, and other

6    Banking institutions/entities since 2004. Example, (According to the Justice Department, on

7    July 12, 2012, Wells Fargo was found Guilty of Discrimination in its mortgage and lending

8    policies between 2004 and 2009 against Minority--Asiatics a/k/a Black's, African

9    Americans and Indians for the aforementioned practices whereby Wells Fargo was ordered

10   to pay $175 million dollars in Settlement.

11   **67.** Due to the Defendants Discriminatory actions, the Plaintiff is requesting punitive damages

12   from pain and suffering due to extreme stress brought on by the threat of homelessness

13   from GREEN TREE/DITECH/WALTER INVESTMENT MANAGEMENT

14   CORPORATION. The threat was further exacerbated by the bank's unlawful harassment

15   via wire and mail fraud which continued even after GREEN TREE/DITECH/WALTER

16   INVESTMENT MANAGEMENT CORPORATION Defendants received Cease and Desist

17   Letters ordering them to stop the calls at work and at home. One incident of harassment by

18   way of stocking was when the bank came to the Plaintiff home and gave neighbor

19   information about the Plaintiff's issues with the Bank. This was embarrassing, freighting

20   and humiliating. The Defendants caused Intentional Infliction of Emotional Distress

21   through discrimination that caused a great deal of stress, resulting in symptoms of sleepless

22   nights, upset stomach and other related damages as a result of the stress. Creating an

23   Intentional Tort.  The related damages were due to the Defendants purposely ruining the

24   Plaintiff's credit. The Defendants committed these acts while at the same time defrauding

25   the Plaintiff and used the Credit Bureaus to inflict emotional distress onto the Plaintiff

26   because she was questioning the Defendants actions and for standing up for her

27   International Religious Rights, International Aboriginal Indigenous Rights, and her

28   International Human Rights, for proof of Aboriginal Indigenous Autochthonous Status see

     Exhibit _____. WHEREFORE, Plaintiff demands the entry of Final Judgment against the

     Defendants for compensatory damages, interest, costs, fees, credit repair and any other

     relief which is just and proper under the totality of the circumstances.

**COMPLAINT**

1
2
3    **COUNT VII: VIOLATION OF TILA AND HOEPA, 15 U.S.C. § 1601, ET. SEQ.**
4
5    **68.** Plaintiff reaffirms and realleges paragraphs 1 through 67. hereinabove as if set forth more
6        fully hereinbelow. **69.** Plaintiff alleges that the loan that is the subject matter of this
7        AFFADAVIT was and is a consumer-credit transaction within the meaning of TILA and
8        HOEPA.
9    **70.** Defendants violated TILA/HOEPA by failing to provide Plaintiff with accurate material
10       disclosures required under TILA/HOEPA and for not taking into account the intent of the
11       State Legislature in approving this statute which was to fully inform home buyers of the
12       pros and cons of adjustable rate mortgages in a language (both written and spoken) that
13       they can understand and comprehend; and advise them to compare similar loan products
14       with other lenders. It also requires the lender to offer other loan products that might be
15       more advantageous for the borrower under the same qualifying matrix. Defendant FDIC
16       did not inform Plaintiff of the remedy that she could have taken advantage of when FDIC
17       became the Receivership for GMAC Mortgage. Failure to notify the  Plaintiff was a
18       miscarriage of justice against the Plaintiff; therefore, any and all statute[s] of limitations
19       relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, should still stand
20       as an affirmative claim due to Defendants' failure to effectively provide the required
21       disclosures and notices. In this instance the discharge should still apply due to fraud,
22       Offsetting of Financial Assets and Liabilities (FAS140 158 (a))
23
24   **71.** An actual controversy now exists between Plaintiff and Defendant, whereby the Defendant
25       contends she has no right to rescind the loan on the Subject Property alleged in this
26       AFFADAVIT. Whereby Plaintiff was never given any real form of exchange according to
27       the Republican Constitution. Plaintiff is informed and believes, and thereon alleges that the
28       Defendants never gave her a loan, only the appearance of a loan by way of fraud ab initio

**COUNT VIII: VIOLATION OF RESPA, 1 U.S.C. § 2601 ET. SEQ.**

**COMPLAINT**

72. Plaintiff re-alleges and incorporates by referencing all preceding paragraphs as though fully set forth herein. The loan to Plaintiff was a federally regulated mortgage loan as defined in RESPA. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

a) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and; whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. The interest and income that Defendants have gained is disproportionate to the situation Plaintiff find herself in due directly to Defendant's failure to disclose that they will gain a financial benefit while Plaintiff suffers financially as a result of the loan product sold to Plaintiff.

73. No separate fee agreements, regarding the use of DITECH and all Defendants' "Cost of Savings" as the Index for the basis of this loan, Disclosures of additional income due to interest rate increases or the proper form and procedure in relation to the Borrower's Rights to Cancel were provided.

74. Defendants violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving. As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

## COUNT IX: RECISSION

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Plaintiff is entitled to rescind the loan and all accompanying loan documents for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement upon request; 3) Fraudulent Concealment; 4) Fraudulent Inducement; 5) failure to abide by the PSA; 6) making illegal or fraudulent transfers of the note and

28

**COMPLAINT**

Mortgage/Deed of Trust; and 5) Public Policy Grounds, each of which provides independent grounds for relief.

77.    The Truth In Lending Act, 15 U.S.C §1601, et. seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind. There however, is no statute of limitation on Fraud. Here, Defendants have failed to properly disclose the details of the alleged loan. Specifically, the initial disclosures do not initial TILA disclosures, and lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiff in a loan she could not afford and would ultimately benefit Defendants following the negative amortization that accrued.

78.    As a proximate result of Defendants' actions, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

Recoupment to Plaintiff is requested under the GAAP and GAAS and the FASB Regulations: FAS125 Securitization Accounting; FAS140 Offsetting of Financial Assets and Liabilities; FAS133 Derivatives on hedge accounts and FAS95.

WHEREFORE, Plaintiff prays for rescission of the stated loan in its entirety.

**COMPLAINT**

1
2
3
4

### DEMAND FOR JURY TRIAL

5   Plaintiff demands trial by jury of all matters so triable as a matter of right pursuant to OCPA.

6   R.C. 2923.31 and Organized Crime Control Act of 1970," 84 Stat. 941, 18 U.S.C. 1961(1)(B),

7   (1)(C), (1)(D), and (1)(E). Dated this 22nd day of January, 2016. Please direct all responses to

8   this Complaint to the Allodial Estate, Moorish Aboriginal Trust address below. c/o Sakina

9   Maysan Bey, via 1422 Lansdowne Boulevard. Ohio 44505 Tel: (330) 747-4417

10

11   Dated: 02-03-2016

        Sakina Maysan Bey, Responsible Party for

12      ENS LEGIS: HAYES, SHEILA M.

13      *Sakine Maysan Bey*

14      Plaintiff In Propria Persona Sui Juris

15      U.C.C.1-207/1-308;U.C.C 1-103.6 All Rights Reserved

16
17
18
19
20
21
22
23
24
25
26
27
28

30

**COMPLAINT**